**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHRISTEN ANN KUFFEL,

Plaintiff,

v. Case No. 8:26-cv-1761-KKM-AAS

FOURSIGHT CAPITAL LLC, and
MURRAY FORD OF KINGSLAND,

Defendants.

---

**ORDER**

Defendants Foursight Capital LLC and Murray Ford of Kingsland move to compel arbitration of Christen Ann Kuffel's claims against them and to stay this proceeding. *See* Mot. (Doc. 10). Despite indicating that she opposes, *see* Mot. at 21 (Local Rule 3.01(g) certificate), Kuffel fails to respond to the motion. Therefore, I treat the motion as unopposed. *See* Local Rule 3.01(d). For the reasons below, I grant the motion, compel arbitration, and stay the proceedings in this Court.

## I. BACKGROUND

In December 2025, Kuffel "entered into a transaction" with Murray Ford for a vehicle. Compl. (Doc. 1-1) ¶ 11; *see* Buyer's Order (Doc. 10-1) at 7–8. The next day, "[t]he transaction was memorialized in a retail installment sales

contract" (RISC), which was immediately assigned to Foursight. *See* Compl. ¶ 11; RISC (Doc. 10-1) at 10–13.

The Buyer's Order contains an arbitration provision that states that, "Any controversy or claim between or among the Buyer and the Seller, including, but not limited to, those arising out of or related to this Agreement or any related instruments, including any claim based on or arising from an alleged tort, shall, at the request of either party, be determined by binding arbitration in accordance with the [Federal Arbitration Act (FAA)]. Arbitration proceedings will be administered by the American Arbitration Association and will be subject to its Commercial Rules of Arbitration. . . . If there is a dispute as to whether an issue is arbitrable, the arbitrators will have the authority to resolve any such dispute." Buyer's Order at 8. Kuffel signed the Buyer's Order and acknowledged that she "read the matter printed on the back" and "agree[d] to it." *See id.* at 7 (citation modified). The arbitration provision is included in the "matter printed on the back." *See id.* at 8 (citation modified).

Kuffel alleges there are issues with the RISC and that she attempted to rescind the transaction. *See* Compl. ¶¶ 12–21. After her efforts failed, she sued in Florida state court on May 15, 2026, asserting a declaratory judgment claim (Count I), a rescission claim (Count II), a violation of the Truth in Lending Act (Count III), a violation of the Florida Deceptive and Unfair Trade Practices Act

(Count IV), a claim for derivative liability under the Federal Trade Commission Holder Rule (Count V), a claim for "unauthorized unilateral modification of consumer credit contract" (Count VI), and a claim for injunctive relief (Count VII). *See id.* ¶¶ 23–56. With Murray Ford's consent, Foursight removed the action to this Court on June 16, 2026. *See* Notice of Removal (Doc. 1) at 1–3. The defendants jointly move to compel arbitration, *see* Mot., and Murray Ford moves in the alternative to dismiss the complaint, *see* MTD (Doc. 11).

## II. LEGAL STANDARDS

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emps. Ins. Of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The FAA reflects a liberal federal policy favoring arbitration. *Jpay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). If parties agree to arbitrate a dispute, the court must enforce that agreement. *Id.*

Of course, "the FAA does not allow a court to compel arbitration unless it is satisfied that the parties agreed to arbitrate." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1346 (11th Cir. 2025) (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49 (2024)). "Before referring a dispute to an arbitrator,

therefore, the court determines whether a valid arbitration agreement exists." *Id.* (quoting *Coinbase*, 602 U.S. at 149).

## III. ANALYSIS

The defendants argue that there is a valid arbitration agreement that requires that I stay this action and compel the parties to arbitration. I agree. The defendants establish, and Kuffel does not contest, that the Buyer's Order, which Kuffel and a representative of Murray Ford both signed, has a broadly worded arbitration clause between Kuffel and Murray Ford. *See* Buyer's Order at 7–8. And the defendants contend that Foursight may also enforce the arbitration clause under Florida law. *See* Mot. at 11–13; *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (explaining that state contract law determines whether a nonparty to an arbitration agreement "may force arbitration").

Under Florida law, for a contract's arbitration provision to extend to another document, "the contract must expressly refer to the document or sufficiently describe [it] so that the document could be interpreted as part of the contract." *Phoenix Motor Co. v. Desert Diamond Players Club, Inc.*, 144 So. 3d 694, 697 (Fla. 4th DCA 2014). Here, in circumstances where financing is to be arranged by the dealer, the Buyer's Order refers to signing the RISC as the point at which the Buyer's Order becomes binding, though it calls the RISC by

a slightly different name. *See* Buyer's Order at 7 ("If financing is to be arranged by Dealer, this is not a binding contract and no contractual relationship exists until full disclosure required by the Federal Consumer Protection Act is made by the presentation and signing of a Retail Installation Sales Contract by the buyer."). The arbitration provision also contemplates sweeping in the RISC because it applies to "this Agreement or *any related instruments*." *See id.* at 8 (emphasis added). Thus, the arbitration provision in the Buyer's Order applies to the RISC.

Further, Florida law allows parties in Foursight's position to enforce such arbitration agreements. *See Passerrello v. Robert L. Lipton, Inc.*, 690 So. 2d 610, 611 (Fla. 4th DCA 1997). *Passerrello* affirmed the trial court's order compelling arbitration in nearly identical circumstances to those found here. *See id.* There, a purchaser of a used car sued both the dealer and bank that financed the transaction. *Id. Passerrello* held that the location of the arbitration provision in the purchase agreement instead of the financing contract, which was executed at the same time as the purchase agreement and then assigned to the bank, did not preclude enforcement of the arbitration provision by the bank. *See id.*; *see also Julian v. Rollins, Inc.*, No. 8:16-CV-3092-T-30TBM, 2017 WL 495866, at *3 (M.D. Fla. Feb. 7, 2017) (compelling arbitration in similar circumstances because of *Passerrello*'s holding).

The defendants are correct that Foursight may also enforce the arbitration provision.

The arbitration provision delegates to the arbitrators the threshold determination of arbitrability, which includes whether the scope of the arbitration clause encompasses the asserted claims. It does this twice: once by directly stating so, *see* Buyer's Order at 8 ("If there is a dispute as to whether an issue is arbitrable, the arbitrators will have the authority to resolve any such dispute."), and once by incorporating the American Arbitration Association's (AAA) Commercial Arbitration Rules, *see id.* The Eleventh Circuit holds that incorporation of AAA rules that provide that "[t]he arbitrator shall have the power to determine his or her own jurisdiction," including "the existence, scope, or validity of the arbitration agreement" is a "clear[] and unmistakabl[e] agree[ment] that the arbitrator should decide [arbitrability]." *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (citation modified).

Here, the arbitration provision calls for AAA's "Commercial Rules of Arbitration." Buyer's Order at 8. The current AAA Commercial Arbitration Rules, in effect since September 1, 2022, include Rule 7(a), which states, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration

agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *See* Am. Arbitration Ass'n, Commercial Arbitration Rules, at 14. "An arbitrator, not the district court, must decide whether [Kuffel's] claims are within the scope of the arbitration agreement." *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012) (per curiam).

## IV. CONCLUSION

Because Kuffel and Murray Ford entered into a binding arbitration agreement, and under Florida law that agreement extends to Foursight, I grant the joint motion to compel arbitration.

Accordingly, the following is **ORDERED:**

1. The Joint Motion to Compel Arbitration (Doc. 10) is **GRANTED**.
2. Murray Ford's Motion to Dismiss (Doc. 11) is **DENIED without prejudice**.
3. Kuffel's claims are **REFERRED** to arbitration under the parties' agreement.
4. This action is **STAYED** pending conclusion of the arbitration, and the Clerk is **DIRECTED** to administratively close this case.
5. The parties must file a status report on the arbitration on **February 2, 2027**, and then **every 180 days thereafter**. The parties shall

promptly notify the Court of any resolution of the claims asserted in this action.

**ORDERED** in Tampa, Florida, on August 6, 2026.

Kathryn Kimball Mizelle
United States District Judge